Good morning, Your Honor. May it please the Court, Gennady Lebedev for the appellants. This case involves the Petroleum Marketing Practices Act and a gas station dealer and a gas station franchisor. The PFPA, the Petroleum Marketing Practices Act, was enacted to create certainty for the parties doing business in the petroleum industry. Let me try to characterize the case a little bit. The other side says, Conocophillips says, what do you want from us? I mean, we made this offer and the guy enters into the escrow, he puts down money, agrees upon a date, and so, you know, we're happy, everything is fine, and all of a sudden he pulls the rug out from underneath us. Doesn't even tell us about this lower appraisal as anything else, and so you just really are, it's stopped from relying on the 90-day rule. Your reaction to that is what? Was that raised below, by the way? Excuse me? Was that issue raised below, there's an estoppel, the whole 90-day problem? That was never raised below. I didn't think so. Below, it was simply a motion for summary judgment saying that the original offer that was made in April of 2003 approached fair market value, and there was no question of fact about that because somebody a year later agreed to buy it for that price. That was the issue below, and my argument below was we had an appraisal that contradicts that value in 2003, not a year later when the value of the property had gone up. And did you object in the district court to the fact that this subsequent right of first refusal was outside the 90-day period? I believe that was raised as an issue in the sense that... Now you're getting awfully squishy. You believe that was raised as an issue in the sense... I mean, did you stand up and say, time out, this doesn't even work because it's outside the 90 days? Right. What we argued was that the subsequent offer is inapplicable to the original offer, and the respondent never brought up the fact that the first offer should be thrown out. In fact, they insisted that the original offer was binding and valid. Their argument simply was that because there's a subsequent offer a year later, it proves as a matter of law that the original offer was bona fide because somebody was actually willing to pay for the price. Well, the court says, the uncontroverted facts establish that the defendant found a buyer who was willing to purchase the premises for $980,000, that before selling it, the defendant offered it to the plaintiff on the same terms. By doing so, the defendant has met his duty under PMPA. There's no mention of this 90-day requirement. Because the argument was never raised... You never raised the 90-day problem? Well, let's step back a minute. The argument made by the respondent was never that the second offer was the one that they were relying on, which then would have triggered the 90-day argument. The argument that was made was that the original offer was the offer they were relying on, and the evidence for why the original offer was bona fide was the subsequent offer. And so, had they come into court and said, the original offer is thrown out, it's rescinded, we are now proceeding under the PMPA section that says we're entitled to give you a right of first refusal rather than a bona fide offer, then the 90-day argument would have been relevant at that point to say, wait a minute, you can't make that argument because you didn't make that offer within 90 days. So ConocoPhillips never made the argument, you don't have to worry about the first part because we got them on the second part. Correct. Because the argument below was, we have the first offer, the first offer is valid, they insisted it was valid, they kept arguing that it's still valid. And that the second offer is the evidence on which they rely... That the 980 is valid. That the value is valid, not that the first offer should be thrown out and now we're relying on the second offer. And so, the 90-day argument was never at issue at that point. The 90-day argument came up on appeal when the response, when the responding brief made the argument that, well, even if the first offer was not valid, now that they've realized they have a problem, we're relying on the second offer. And so, I'm saying they can't rely on the second offer because it wasn't made within 90 days. And my whole basis for this appeal is the fact that the PNPA is there, it's a law enacted by Congress to create bright line rules for parties in these transactions to follow so they can know how to conduct themselves. And so, when my client is coming to me and they have an offer, a bona fide offer, and we have an appraisal that says that offer is 31% higher than the fair market price, he proceeds accordingly. And when the respondent makes a right of first refusal offer but never withdraws the original offer, never rescinds the notice of non-renewal, because that's what they should have done. They should have, when they came up with, when they, after the lawsuit had been in litigation for a year, they could have withdrawn non-renewal and said, okay, you're back to being a franchisee of ConocoPhillips. And at some point, given them a right of, here, now we're getting a new notice of non-renewal and a new right of first refusal. And at that point, the PNPA is clear that when a right of first refusal is given within 90 days of your offer, you're required to either purchase the property for that price or turn over the keys. That didn't happen here. The entire time, from beginning until the end, ConocoPhillips argued that the original April 2003 offer was the one that they were relying on. And they never rescinded the original notice of non-renewal. And therefore, the appellant conducted themselves in reliance on the PNPA, on what the PNPA provides. And now... Yes, Your Honor, and... File a motion for reconsideration. No, Your Honor, because we had previously made a motion, or I'm sorry, an application for a preliminary injunction on the same exact grounds the court denied it. We brought a motion for reconsideration because the court applied the wrong standards under the PNPA. The court applied the Ninth Circuit standard instead of the PNPA standard for a preliminary injunction. The court did reconsider that, but still denied the injunction under the PNPA. And so my understanding was that the grounds that the court was using in the summary judgment were similar grounds that the court relied on before. And therefore, I thought it would be futile to do that. I just didn't think, respectfully, I just didn't think the court understood the nuance of the PNPA, which is a complicated statute. I like to use the analogy, it's like an onion. You have to keep peeling away the layers to get to the heart of the issue that you're looking for. And this 90-day notice issue, it's hard to follow. You have to go from one section to jump to a subsection, to another subsection, to draw it, to connect the dots, to see what the law is trying to say here. But it is a bright-line rule that the parties should follow. And whether ConocoPhillips did it intentionally or not, they, I believe, didn't conduct themselves according to those rules. And they cannot now come and say, well, equity demands that the appellant should lose because we relied on his actions. Well, the appellant... So what are you asking us to do and why? What we're asking you to do is remand this case back to the 9th Circuit, I'm sorry, back to the Central District, and let the case go to trial on the issue of whether the original April 2003 offer was, in fact, bona fide, because that's the question of fact, which everybody agrees that is a question of fact. The only disagreement is, is that offer, as a matter of law, bona fide because of a subsequent offer a year later? And that's something that can be litigated. If we agree with you, what happens to the rest of it, the 17-200, the breach of the covenant, the breach of the covenant, and all that, the rest of it? Well, I believe it all, I mean, those statutes or those claims are essentially dependent on the original PMCA claim. Those would be restored? I think they would just be restored and brought back up in front of the Central District and then for further proceedings. I believe the declaratory relief, the PMCA provides for injunctive relief and for declaratory relief. And so, and at this point, ConocoPhillips, despite the fact that the appellant has filed a list pendants on the property in a timely manner, ConocoPhillips has sold the property to another buyer and has actually indemnified them, depending what happens in this case. And so, there will be issues to be decided or need to be declared vis-a-vis the rights of the parties here, whether there's any right for any further... And if we set it back, it's wide open again. So, is the second prong of their opportunity then available for them to say, well, in any event, we did give you what we were required to give you under the statute, and we gave it within 90 days? But they didn't... They didn't give it within 90 days. Does that whole thing open up also? No, Your Honor. I believe that the whole point of my argument is that they were not excused from the 90 day requirement and that the right of first refusal offer given a year later was not within that 90 days. So, that second offer... Yeah, but their whole point is there's an estoppel. So maybe they get to argue their estoppel thing in district court too. I don't believe that that argument would be valid because there's no estoppel here. It's an issue of... It's a question of law. It's a question of interpretation of the PNPA. There's no estoppel provided for in the PNPA. In fact, the PNPA places the burden on the franchisor to prove that they've complied with the PNPA. Once they've issued a notice of non-renewal, the burden shifts to the franchisor to prove that they've complied with the requirements of the PNPA, one of which is to make an offer within 90 days. They did make an offer within 90 days. That was the purported bona fide offer in April of 2003. The subsequent offer in May of 2004 was no longer part of that 90 days. So that offer, they can rely on it as evidence for what the value may have been in 2003 somehow. They could make that argument, but that would be a question of fact. But they cannot, as a matter of law, rely on that. I'd like us to hold that the second part, it's outside 90 days, so it's of no moment other than as evidence of the bona fide-ness of the offer in the first place. Right. When ConocoPhillips made the original offer and the original notice of non-renewal, that is what frames the case under the PNPA. What happened later is just what happened later, and they can use that as evidence and make arguments about how that affects their original decision and the original offer. But the second offer was no longer pursuant to the PNPA. In fact, they argued that they weren't required to make the second offer under the PNPA. The only thing that they relied on for the second offer was as evidence of why the first offer was bona fide, and there's arguments as to why it wasn't. I'll reserve the rest of my time for rebuttal. Thank you, counsel. Thank you. May it please the Court, I'm Paul Fogel for Appalachia ConocoPhillips. Judge Trott, before we get all excited about waiver and sending back and things like that, let's take a look at what the evidence was before the district court. In our initial summary judgment motion- Evidence as to what? Evidence about this right of first refusal offer, okay? Because that's really the nub of this appeal. Did we, even though there was a tribal issue of fact on the offer, bona fide offer, which the district court found, and we're not relying on that, on the absence of a tribal issue of fact to sustain the summary judgment, the district court nevertheless found that we complied, as a matter of law, with the PNPA because we gave Fosley a right of first refusal offer of 45 days duration. And that was given on May 25th, 2004, more than three months before the end of this lease. And it was on that basis that the district court found, both in its order and reconsidered order, denying the TRO and denying the preliminary injunction, and in its summary judgment order, that we, quote, met its duty, ConocoPhillips, quote, met its duty under the PNPA. In the initial summary judgment motion, we filed a declaration by Mr. Bonina. So how do you cope with a 90-day requirement? But can I just, I won't answer that, but I want to make sure. Why don't you answer it? Okay. The 90-day rule is, let's look at what it is. It requires that the franchisor give, in this case, a right of first refusal offer within 90 days of the notification of non-renewal. Right. Right? That was not done. What was not done? We didn't give the right of first refusal within 90 days of the notification of non-renewal. Correct. But why didn't we give it? Well, we gave the notification of non-renewal April 22nd, 2003, and there's no dispute that it was valid under 2804. It met all the five requirements. They knew when the non-renewal... Don't get off on that. Okay. That's not an issue. Then we went to this business about the competing offers, but we didn't know about that E. Williams appraisal. Correct. The appraisal went through litigation. It comes up to the... We then find a buyer. Escrow falls through, right, in September of 2003, much to our surprise. We then go out and find a buyer in May of 04. And in May of 04, we send Mr. Fosley a letter saying, we are now complying with the other part of the PMPA, the 45-day right of first refusal offer. Forget the bona fide competing offer thing. We found a buyer. He's going to pay $980,000. Here's a real estate contract for you to sign if you want it instead. You have 45 days. Then Fosley tried to block that... Fosley apparently decided not to accept that offer, hoping, putting all his cards in the litigation that was pending. He then tries for a TRO to block the sale. District court denies. He then moves to reconsider the... You know, I know all of that, but it's all outside of the 90-day window that you have to make your... But what is that... ...to offer him a right of first refusal. What is that 90-day thing there for? It's to make sure that we're not precipitously throwing him out the door. It's to make... The cases all say the purpose of the 90-day, the purpose of all these notification requirements, the day requirements, 180, 120, 90, is to make sure that the franchisee is not precipitously thrown out and can make plans, okay? We gave him that notice in April of 2003, and the validity of that notice is not in dispute. So if you want to look at this the way reality is, we gave him more than a year... We gave him a year and a half notice. And what he's saying... Counsel, what was the effect of Mr. Fosley accepting the offer under protest? Well, there is a case called ProSales, and it says if you accept under protest, then you are not... You still have rights under the PNPA, but the ProSales case needs to be read very carefully because what happened there was the franchisor gave an offer, said, I'm not going to renew. The franchisee said, I protest. I'm suing you. And then the renewal went through, okay? And the franchisor said, ah, guess what, District Court? You don't have jurisdiction because the PNPA requires a non-renewal, and this thing has been renewed. And the Court of Appeals then said, no, no, no, no. We don't play that game. You know, if you've filed under protest, if you've accepted under protest, you retain your rights under the PNPA. Isn't that exactly what happened here? So, if Mr. Fosley accepted the offer under protest, and the PNPA is still in effect, then you would have had to comply with the 90-day requirement. You are right with one gigantic exception. And, of course, in ProSales, there was never a second compliance with the PNPA. The compliance here with the PNPA was the right of first refusal offer. We gave him 45 days. It's untimely, though. It's untimely. How is it, you know... You admit it's untimely. It's outside the 90 days. I think it would be useful, and it was useful for me, so I'm suggesting to the Court to read the First Circuit's decision in Avramidis, A-V-R-A-M-I-D-I-S, 798 Fed Second 12. Was that in your brief? Yes. And that case talks about the reason we have notification requirements, and the issue there was whether the franchisee needed a new notice requirement. Sound familiar? A new notice requirement. Different part of the statute, and my opposing counsel is absolutely right. This statute is like an onion you have to keep peeling. It has a million subdivisions, but the issue there was whether the franchisee needed a new notice, and the Court said 2804 prescribes a minimum notice period, but not a maximum. Although the franchisor must provide at least 180 days notice to a B-terminated, a to-be-terminated dealer, nothing in the PMPA prevents the franchisor from providing more than 180 days notice. But you're turning a shield into a sword. I don't know what we're trying to do. What I'm trying to do is rely on the April 2003 notice. What is the purpose of the notice? The purpose of the notice is to make sure they're not surprised. Was Feisley surprised that we were not renewing? Hardly. He was thrilled and delighted. He was suing us over it. Did he know why we were not renewing, which is another prong of 2804 notice? Of course he knew, because we gave him a bona fide offer to sell. We told him, we are selling these premises. We don't want them anymore. The purpose of the notice requirement is, do you have enough notice? Do you know why? Is it by certified mail? Do you know how the PMPA works? Well, I think he did know how the PMPA works. You're asking us to write the 90-day rule then out of existence. No, I'm asking you. How does the 90-day rule survive? What good is it if we buy your position that once there's a notice, you don't care about any of these time frames? Well, the cases talk about a rule of reason. The cases talk about, we don't exalt form over substance. They talk about strict compliance because of what this is. Strict compliance with 2804, not strict compliance with 2802. The distinction which I briefed ad nauseum is very important. We gave him, we strictly complied with 2804, the five elements. We told him when the lease is expiring, why we're getting out of it, that we are selling, that we have a good faith business reason for selling. We gave him by certified mail and we gave him the DOE summary, the five elements, in April of 03. Why? Counsel, in your view, what does the PMPA contemplate when the franchisor is told that the offer doesn't constitute a bonafide offer? When the franchisor is told that the offer does not constitute a bonafide offer. Yeah, you're put on notice. We're put on notice? We don't think it's bonafiding. We don't think the price is. We can negotiate with him and come down and ask him, do you have any evidence why our $980,000 is valid? Of course, he didn't tell us about the Eve Williams appraisal. We didn't know. We thought, as far as we knew, 980 was it. We have an appraisal this thick. So it puts us on notice that we, that he doesn't agree with us. But does that preclude us from going out and finding a buyer? Hardly. No, not if you do it within 90 days. But, Your Honor, I think there has to be some practical reason why you have to strictly comply with the 2802, 2802 90-day requirement. We're not talking about the 2804. To resolve the issue of whether or not it's been a bonafide offer. If it's a bonafide offer and you give him a right of first refusal within 90 days, that solidifies the fact that it was bonafide because somebody else within 90 days was willing to purchase it for that amount. Well, as I read the statute, we have to give him a notice of non-renewal. And within that 90-day period, either on the first day or up to the last day, we can make him a right of first refusal offer. What is the purpose of that? It's to make sure we're not pulling the rug out from under him. If we give him notice, if we don't give him any notice of non-renewal and we just shove a right of first refusal offer in his face, he can say, well, why are you doing this? I didn't, are you not renewing me? Or like, what's happening? That's a no, you're not renewing. That's a no, you're not renewing it because it's the alternative. It's, you're selling as opposed to renewing. But we have the flip side of that. We have the way before notice. It's still an alternative. And then once, you know, looking at the reason why this statute was enacted, you know, the intent of Congress was to protect the franchisee in this situation. So looking at that intent, once the franchisee notifies the franchisor that it does not feel that it's been given a bona fide offer, then it would appear to me that the purpose of the statute is to protect the franchisee in that situation and not the franchisor. That is correct. If there's no right of first refusal offer that comes on top of it. Timely, timely right of first refusal. Well, the, I mean, your own case, not your personally, but the Ninth Circuit case in Unicole, 177 Fed 3rd says, the PMP is not a one-way street, which should single-mindedly be construed to favor the franchisee position all the time. And this is a situation where we gave, what is the purpose of this notice requirement? It's so he knows, cases say, so he's aware. We're not talking about the notice requirement. See, you're focusing on the notice requirement. We're talking about why wasn't the right of first refusal offer given in a timely fashion. We all agree that the notice provision was met, amply. But the problem is with the right of first refusal and why it didn't comply with that 90-day. Once Conoco was aware that the bona fide offer was not considered actually bona fide, then it would appear to me that the 90-day provision, I mean, even if you did within 90 days of being told that they questioned the bona fide nature, I think you'd have a better argument. But Fosley's argument is as follows. We were litigating about this, whether these competing appraisals meant we had a bona fide offer. Fosley's argument is, okay, you gave me a right of first refusal offer, but you didn't give me a new notice of non-renewal, a new or amended notice of non-renewal. Now, Your Honor, we have, oh, and what does that say? What has to be in it? When the lease is expiring, why we're not renewing, certified mail, and so forth. Let me switch gears on you a little bit. The other side says you never made these arguments in the district court. You relied only on the second part of it as evidence of the bona fides of the original offer. Okay, I'm gonna read to you from our reply brief in summary judgment, 679. ConocoPhillips motion demonstrated, and this court has already held, meaning in the preliminary injunction TRO proceedings, that ConocoPhillips met its duty under the PMPA by, quote, finding a buyer for the premises at 980,000 and offering to plaintiff a right of first refusal. See August 24th order denying motion to amend. That's the reconsideration. Okay, accordingly, plaintiff now reverts to his other thing about the bona fide, the competing offers, 9680. This, however, this argument about the bona fide offers is simply irrelevant. The court has already held that ConocoPhillips complied with the PMPA by offering plaintiff the right of first refusal. Right there in the reply brief. Now, it's not in the opening papers, but what is in the opening papers is Mr. Bonina's declaration, paragraph six, page 100, that says ConocoPhillips voluntarily decided to offer Fosley the option to match the third party offer. True, this issue, this argument was not developed in the opening summary judgment papers, but it came up in the preliminary injunction and TRO issue, and that was indeed the basis on which the district court, at SCR five, because my opponent didn't include that paper in his ER, the district court found, yeah, there's a triable issue of fact on this bona fide offer, 980 versus 840 versus eight, seven, whatever it was. But there is no issue that you met your duty under the PMPA with this right of first refusal offer. Therefore, there's not a sufficient likelihood that you're gonna prevail. Therefore, I'm denying preliminary injunction, TRO relief. Then we file a summary judgment motion. He opposes, he doesn't talk about the right of first refusal offer, and then in the reply we say, and by the time the reply was filed, the district court had already ruled on the TRO and PI, by the time the reply is filed, we say just what I read you, that there is no triable issue of fact on our compliance with the PMPA on the right of first refusal prong. Did anybody argue the 90 day problem with the right of first refusal at all? No. So it's not surprising that the district court found no problem, and my argument to you is that as a matter of law, I mean there's no dispute, so there's no, with due respect, there's no reason to send this back and have this litigated, because there's no fact issue. You know, we know every fact necessary. The real question is the question of law. Is there a reason for applying a strict compliance standard on 2802? I'm not talking about 2804. I give to you, the Seahorse decision says 2804 gets construed strictly, except in matters of trivial noncompliance, okay? And so the question is whether in a 2802 situation, and I've cited cases that interpret a different subdivision of 2802. Not real convincing on this point. All right. But I've cited cases that say strict compliance with the notice provisions in 2802 is not necessary, and indeed you have this avramitous opinion from the First Circuit that says if you give them more than the statutory notice, that's hardly a problem. It's when you give them less notice. We are talking about, and remember again, I just have to, sorry, what does Fosley want? He wants, he wanted us to give him a new notice of non-renewal that says exactly the same, that would have said exactly the same thing as the notice that we gave him in April of 03. Let me understand your characterization of Fosley's position. You're saying never complained about the fact that the right of first refusal wasn't within 90 days. The only issue was whether or not a new notice had to be given. Is that how you characterize? No, Your Honor, he did not even say, he didn't utter a word about a new notice. But I thought that's what you said, that's what he wants. That's what he wants. Now, on appeal. In this court, in this court he's saying that, but in the district court, on page 559 of his excerpt, you will have his argument about the right of first refusal offer, and his argument was the didn't, I'll quote, defendant's offer of right of first refusal, however, failed to include a copy of the third party offer, and nearly purports to recite some of the terms of the third party offer. Likewise, the right of first refusal offer failed to indicate whether the terms being offered are identical, and that it required a deposit of this and that. Nothing about time, nothing about no notice, just about inconsequential, and as a matter of law, these things are inconsequential, because Congress did not require any form for the right of first refusal, distinguished from the notice of non-renewal. So, he didn't raise it, and in our reply we said, we complied with the PMPA, as the district court found in its preliminary injunction ruling, and therefore, notwithstanding an issue of fact about the bona fides of the offer, you may grant summary judgment, because we complied with a different provision of the PMPA. That's where the district court lost me. If the district court had ruled you didn't have to provide a new notice. If they had been told about that issue. The ruling that you complied with the right of first refusal just befuddles me, because there was not compliance. Well, that is technically correct. We did not give Fosley a new notice of non-renewal, but I have to, I'm sorry to... What did he want that notice to say? The same thing that I said. This is the biggest red herring I've seen this week. There's one notice, and then you got 90 days. Thank you. All right, we understand your argument, counsel. Thank you. Rebuttal. The only thing that gives me pause about your position is when I asked you, why didn't the district court talk about this 90-day thing? I got the impression that because nobody raised it. I asked the other side, did anybody raise this 90-day problem with the right of first refusal? Says no. Is that the situation? Nobody raised the 90-day issue at all in district court? Not in the way that we're talking here, but it's important to understand why. If you read the summary judgment, not the reply, because by the way, we didn't have a chance to reply to the reply. Well, but the reply's there, and the issue was up earlier. Well, except- So you're conceding that it wasn't raised, the 90-day problem was not raised. Now you're saying- Not in the way that we're raising it here, but it's important to understand the reasons for that. So why should we go off on that ground? Well, because it's a de novo review. The court's reviewing this case de novo, and it's a question of law, and it's a question of application of law. And as a side, the appellant, plaintiff at that time, did not have a chance to respond to the reply. The court took the matter off calendar. There was no oral argument, not permit oral argument on motions. And- It's not like you were surprised by that. It had come up earlier, the right of first refusal. Well, no. If you read the motion for summary judgment, the argument, the way that it's structured, and I did raise this in my opening brief here. The way the argument's structured is that our notice is compliant, and that we are- Yes, but what about the right of first refusal? Well, no. They've never argued that the right of first refusal is the one that shows, is the one that they're relying on, that that is the offer that should be examined for the bona fides of whether they comply with the PMPA. They're, from the beginning, relying, and to the end, relying on the April 3rd, 2003 offer, or April 22nd, 2003 offer. That's the offer that they've stuck by throughout this case, until the appeal. And so that's the offer that we were concentrating on throughout the case, and saying that, there's a question of fact here. It's a question of whether it approaches fair market value or not. Because had the offer from the beginning approached fair market value, he could have bought the property for $745,000 from the start. Well, why did the district court rule, did you have a question? No, I just said maybe. Oh, why did the district court rule that there was compliance with the right of first refusal portion of the PMPA? What the district court was saying, which is the same thing the district court said on the TRO, that because the second offer was made, I mean, sorry, because there was a buyer willing to purchase the property at 980, and because there's a right of first refusal that was given for that, then that somehow supersedes the original offer. But that wasn't the argument that the respondent was making. That's something the court read into it. What the argument the respondent was making is that we, that the original offer for 980- The respondent was making that argument in its reply brief. Later, well, if you listen to what the reply brief said, it doesn't say it exactly the way that we're saying it now. It insinuates that there may be some suggestion of that there. But they're still sticking by it with the fact that the original offer was good from the beginning. Because if it wasn't, then we should prevail on that, and we'd get attorney's fees, and they don't want to get into that area. Well, the court recognized that there was an issue of fact on that. The district court said there was an issue of fact on whether or not the first offer was a bona fide offer. So I'm not going off on that prong. I'm going off on the other one, there was a right of first refusal. Right, and that was a mistake, and that's the part that we didn't have a chance to argue, because it was raised in the reply that way, and that's what's the issue on appeal. Now, the case law that counsel is citing for the notice requirement is wholly inapplicable to the facts of this case, or to the law being examined in this case, because those cases deal with a situation where there's a third-party lease, where the franchisor is leasing the property from a landowner and subleasing it to the franchisee, and the notice that they're talking about there is in the franchise agreement, the franchisee is required to be apprised of the fact that there's a third-party lease, and if the franchisor loses the right to grant possession to the franchisee under the third-party lease, then the franchisee will be thrown out  and so those cases deal with a situation where there was leases entered into prior to the enactment of the PMPA, and so there were exceptions by those cases made for those situations where the franchisor before the PMPA didn't give notice of the situation. They're not very apposite, they're not very applicable. Right, they're not really applicable here. What did you think was gonna happen after the first notice? After the first notice? Yes. Well, there was only one notice, but the first notice was made. Well, the notice, yeah. Right, the notice tells the franchisee, you will not, we will end your franchise agreement. You will no longer be our franchisee, and because we're selling the property. That's what the notice says. Then what's supposed to happen after that? Then within 90 days, they're supposed to give you an offer. Now, the right, this is the distinction between 2804 and 2802. 2804 sets out how the notice should be structured, a format for the notice, like what kind of thing should be disclosed. Proper notice? Yes. Then 2802 says you, as the franchisor, now have the right to, because they can't just throw you out willy-nilly. They have to comply with the law, so you have the right to terminate this franchise, to non-renew this franchise if you do these things, and one of the things that you have to do is make an offer within 90 days, whether it's a bona fide offer or whether it's a right of first refusal offer. The offer made here was a bona fide offer, and then the right of first refusal offer came a year later, relying on that same original notice of non-renewal, which was never rescinded. Before they got the second notice, what was the franchisee supposed to do?  the franchisee was supposed to rescind the original notice that says, we changed our mind, we're not non-renewing you. He's back to being a franchisee. The person that's operating the station, they get this notice. They continue operating the station. What are they supposed to do after they get this 980,090 days? At that point, they would have a choice, either accept it or not. And they didn't. They didn't, but there wasn't the rescission of the original notice. We're skipping a step. Why are you rescinding it? We are rescinding it because the offer, the right of first refusal offer was given more than a year later. And so the franchisee needs to know how am I going to conduct myself? The law says that they are not complying with the PMPA if they're not giving it to you in 90 days. That's what we relied on. The $980,000 that they mentioned in the first notice was meaningless? It's not meaningless because that's our dispute. Our dispute is that the price should be 745, not 980. That 980 exceeds the fair market value. How is that supposed to be raised by the franchisee? The franchisee filed a lawsuit challenging the original $980,000. Did they? Excuse me? Did they? Yes, they filed a lawsuit challenging the original $980,000 offer. When did they do that? Within 90 days of receiving the offer. Within 90 days, how many days? Well, the offer was made in April and the lawsuit was filed in July. So it was less than 90 days. Which the PMP, and the reason for that is the PMPA provides for injunctive relief. The court's mandatory injunctive relief. So you can't shoot up the 90 days planning your lawsuit without telling them about the $745,000 appraisal or entering into any negotiations? Well, there's no negotiation in these things. It's a take it or leave it offer. And that's why you have the pro sales case for the accepting of the protest is to preserve your rights. But you don't think if Conoco had been shown a different appraisal that that wouldn't have precipitated some negotiations or at least a different course of action? Well, they knew. I mean, we filed a lawsuit where we challenged the price. So we had an obligation to show them an appraisal. They didn't ask us to show them an appraisal. But we did file a lawsuit, we did our due diligence under Rule 11 to file a lawsuit. They should know that. And in discovery, they would get the appraisal. So it's not- Do they have to go that far? I mean, if it's a relationship and you're dealing in good faith, why wouldn't you just say we've got an appraisal for $200,000 less than you've offered us? Well, I mean, they knew what value we were asserting. They just didn't have the appraisal. If you wait for 90 days, you disable them from relying on a right of first refusal. Well, not really, because- Sure you do. If you're telling us it has to happen from within 90 days of the notice. Right, but the burden is on them to make a bona fide offer from the start. And when we file a lawsuit, the PM provides that if we file it within 90 days, we are entitled to mandatory injunctive relief to preserve the franchise. If they thought they made a bona fide offer. If they didn't know that there was a different appraisal. Well, it's an objective standard. It's not a question. That's the dispute over the value. They're contending that they felt 980 was bona fide. We're contending 745 was bona fide. You go to an appraiser, appraiser gives you a number. Why isn't that objectively reasonable? To rely on a number that an appraiser gives you. Well, because it's a question of fact as to which appraisal approaches fair market value. If you know there's another appraisal, but if you don't know there's another appraisal, why isn't it objectively reasonable to rely on the one you have? Well, you can rely on it, but that doesn't mean you're complying with the law. I mean, you can. It sounds a little bit like you're using a shield, again, as a sword. No, you don't want to. When you don't tell them you have a different appraisal. Well, I respectfully disagree because the whole point. It sounds like people are more interested in lawsuits than in resolving the dispute. Respectfully, I've been doing this for a while, and these are take it or leave it offers. There's no negotiation with these offers. When we're 31% apart on the value of the price, it's, we're under the gun to file the lawsuit because if we don't file it in 90 days, then we lose the right to an injunctive relief. To freeze it. When you got the second notice, there was a lawsuit pending. It was in the middle of the lawsuit. When they realized they have a problem here, that's when they gave us the second offer. There was a lawsuit pending. With the lawsuit pending. Would they have made it timely by filing a new notice? They could have rescinded the original notice and made a new notice, and then given a $980,000 offer if they wanted to do that. Or they could have just, if they wanted to sell it for 980 and they didn't have a third party buyer, they could have just non-renewed him and waited until they got a buyer and then made a non-renewal and then offered it. But the whole point of this is, we have to know, if we create these exceptions, then the parties don't know what to do. Because the PMPA is what sets out the Brightline rules to follow. And this 90-day rule is a clear-cut rule. There's no... All right, counsel, we understand your argument. Thank you to both counsel. Case just argued is submitted for a decision by the court. This completes our calendar for the week and we are adjourned.
judges: Trott, Rawlinson, King